**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Noble Supply & Logistics, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-11369 (___)<br><br>(Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND LIEN CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby move (this "Motion") for entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and "Final Order," respectively), pursuant to sections 105(a), 363, 503, 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), granting the relief described below. In support of this Motion, the Debtors incorporate the contemporaneously filed *Declaration of Robert Albergotti, Chief Transformation Officer of Noble Equity Holdings, LLC in Support of the Debtors'*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Noble Supply & Logistics, LLC (7926); COTS Solutions, LLC (4477); Federal Resources Supply Company, LLC (3636); FRS Holdings, LLC (2327); K.D. Analytical Consulting, LLC (6637); KDA Acquisition, LLC (5870); Noble Defense Corporation (N/A); Noble Equity Holdings, LLC (0851); Noble.com, LLC (4712); Noble Mission Support, LLC (7908); and Tactical & Survival Specialties, LLC (2266). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 1 Marina Park Drive, Suite 220, Boston, MA 02210.

*Chapter 11 Petitions and First Day Motions* (the "First Day Declaration")[2] and further represent as follows:

## Relief Requested

1. The Debtors respectfully request entry of the Interim Order and Final Order: (i) authorizing the Debtors to pay, in the ordinary course of business, certain prepetition amounts owing on account of Critical Vendor Claims and Lien Claims (each defined below); (ii) confirming administrative expense priority of Outstanding Orders (defined below); and (iii) granting related relief.

## Jurisdiction and Venue

2. The United States District Court for the District of Delaware has jurisdiction to consider this Motion under 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b) and, pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3. Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363(b) of the Bankruptcy Code, Bankruptcy Rules 2002, 6003, and 6004, and Local Rules 2002-1 and 9013-1.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

## Background

### I. The Chapter 11 Cases

5. On the date hereof (the "Petition Date"), each Debtor commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). The Debtors have requested that these Chapter 11 Cases be jointly administered. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in the First Day Declaration.

6. The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. To date, no creditors' committee has been appointed in the Chapter 11 Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). No trustee or examiner has been appointed in the Chapter 11 Cases.

### II. The Trade Claims

8. As described more fully in the First Day Declaration, the Debtors are a global supplier of non-lethal equipment, supplies, and related services to the United States military and its allies. The Debtors' business depends on uninterrupted flow of products through their supply chains and distribution networks, including the purchase, storage, and shipment of the Debtors' inventory and other goods. This supply and distribution network is critical to the Debtors' operations and maintenance of procurement channels to deliver their tactical operations products. The Debtors' business also depends upon its relationship with its government customers, chief among which are the United States Department of War and the agencies that manage its supply lines, including the Defense Logistics Agency ("DLA") and General Services Administration ("GSA").

9. Certain Critical Vendors and Lien Claimants (each as defined below, and collectively, the "Trade Claimants," and the claims held by such Trade Claimants, the "Trade Claims") are integral to the Debtors' ability to maintain their logistics network, preserve their customer relationships, and carry out their mission, which includes supplying active war zones. The Debtors submit that payment of these claims is necessary to preserve and maximize the value of their assets while they pursue a going concern sale of their business. Accordingly, the Debtors seek this Court's authority to pay the Trade Claims in the estimated amounts set forth below:

| **Category** | **Description of Services Provided** | **Estimated Amount Due or Due to be Paid Within 21 Days (Interim Order)** | **Estimated Amount Outstanding as of Petition Date (Final Order)** |
|---|---|---|---|
| Critical Vendors | Suppliers of goods and services that are critical to maintaining the Debtors' day-to-day operations, preserving the Debtors' relationship with key government customers, or that provide goods and services that the Debtors believe are vital to certain ongoing war efforts involving the United States military and/or its allies. | $250,000 | $4 million |
| Lien Claimants | Suppliers of goods or services utilized by, or provided to, the Debtors that may assert mechanic's, possessory, construction, transportation, or other similar liens. | $250,000 | $1 million |
| **Total Amount of Trade Claims:** | | **$500,000** | **$5 million** |

10. The Debtors will use their business judgment and discretion on a claim-by-claim basis and pay only those Trade Claims, or a portion thereof, that are necessary to avoid harm to the Debtors' estates, including by damaging their relationships with their government customers or disrupting military supply lines in active war zones. The Critical Vendors and Lien Claimants

whose prepetition claims the Debtors seek to pay through this Motion are described in greater detail below.

**A. The Critical Vendors**

11. The Debtors and their advisors have carefully reviewed and analyzed the Debtors' books and records and consulted with key personnel to identify those vendors of goods and/or services that are critical to the Debtors' operations (collectively, the "Critical Vendors," and the claims held by such Critical Vendors, the "Critical Vendor Claims"). The Debtors have a small number of Critical Vendors, the payment of which the Debtors believe is vital to maintain their logistics network and preserve their relationships with key government customers—including and especially the United States Department of War and related agencies.

12. The Critical Vendors include: (i) third-party integrators that require final payment for assembled supply kits prior to delivery, payment of which will quickly generate additional cash for these estates; (ii) key suppliers of goods used in live military conflicts involving the United States military and/or its allies; (iii) businesses owned and operated by disabled veterans; and (iv) claimants related to the Debtors' Noble IQ business, which the Debtors believe may yield substantial value in a going concern sale. The Debtors believe the failure to pay these Critical Vendors could, among other things, result in the cancellation of orders that otherwise would provide an immediate return to the estates, damage the Debtors' relationship with the Department of War and other government customers, and cause the Debtors to suffer reputational harm, particularly with respect to veterans, all of which could harm the Debtors' ability to conduct a going concern sale process or otherwise monetize its assets for the benefit of their stakeholders. Thus, the value of the Debtors' estates will be maximized by preserving the Debtors' existing relationships through payment in accordance with the Interim Order and Final Order.

13. As of the Petition Date, the Debtors estimate that there is approximately $250,000 in the aggregate amount due and owing, or that will become due and owing within the first twenty-one (21) days of the case, on account of Critical Vendor Claims. The Debtors seek authority to pay up to $4 million in Critical Vendor Claims upon this Court's entry of the Final Order.

**B. The Lien Claimants**

14. The Debtors regularly transact business with a number of third parties that may assert various statutory liens, mechanic's, possessory, constructions, transportation or similar liens, against the Debtors and their property if the Debtors fail to pay for the services rendered (collectively, the Lien Claimants," and the claims held by such Lien Claimants, the "Lien Claims"). The Lien Claimants are generally comprised of shippers, freight and parcel carriers, warehousemen, and other transport, storage and logistics providers that support, store, and distribute the Debtors' products. These Lien Claimants play key parts in the Debtors' business and preserving these business relationships and the operational success and stability that goes along with them is critical to the Debtors' transition into chapter 11 as they continue to liquidate their assets and pursue a going-concern sale.

15. In particular, the Lien Claimants' continued cooperation is necessary because they provide the Debtors with crucial logistics services, including the specialized storage, distribution and logistics providers which, at any given time, may be in possession of the Debtors' inventory. Without the ability to pay these Lien Claimants, the possible loss of these long-term relationships could result in significant disruption and financial harm to the Debtors' business. Thus, the Debtors' continued relationship with the Lien Claimants is essential to maximizing the value of their estates—the Debtors simply cannot afford any meaningful disruption to the flow of their product and equipment at this critical juncture in these Chapter 11 Cases.

16. Under certain non-bankruptcy laws, to the extent that the Debtors have not paid for the services provided by the Lien Claimants, such Lien Claimants may be able to assert liens on the goods in such Lien Claimants' possession to secure payment of their claims (collectively, the "Lien Claims").[3] In the event that the Debtors fail to remit payment owed to certain Lien Claimants, the Lien Claimants would likely assert possessory liens and may refuse to deliver or release the goods in their possession, or otherwise impede the Debtors' use of such property until their claims are satisfied and their liens are redeemed. The Lien Claimants' possession and retention of the Debtors' property and products or enforcement of any mechanic's, construction, warehousing, transportation or other statutory or common law lien would disrupt the Debtors' operations and negatively affect the Debtors' ability to efficiently administer these Chapter 11 Cases. In many cases, the cost of such disruption to the Debtors' estate would likely be greater than the applicable Lien Claims. Further, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of any collateral subject to a valid possessory lien, which would deplete valuable estate resources.

17. The Debtors and their advisors examined the health of each Lien Claimant's relationship, the Lien Claimant's familiarity with the chapter 11 process, and the extent to which each Lien Claimant's prepetition claims could be satisfied elsewhere in the chapter 11 process. The Debtors' investigation revealed that, to ensure the continuous operation of the Debtors' business during the Chapter 11 Cases, the Debtors require the services of these Lien Claimants and the loss of the services provided by the Lien Claimants could result in immediate and

[3] For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading or on the proceeds thereof in its possession for charges after the date of the carrier's receipt of the goods for storage or transportation, including demurrage and terminal charges, and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." *See* U.C.C. § 7-307(a) (2005).

irreparable harm to the Debtors' business during the Chapter 11 Cases. Such harm would likely far outweigh the cost of payment of the prepetition claims accrued in the ordinary course of business held by certain Lien Claimants.

18. As of the Petition Date, the Debtors estimate that they owe approximately $1 million on account of the Lien Claims, of which approximately $250,000 is due or will become due within the first twenty-one (21) days of these Chapter 11 Cases. To continue benefiting from the Lien Claimants' services, the Debtors request authority to pay the prepetition Lien Claims as they become due and payable and to continue paying the Lien Claims in the ordinary course of business on a postpetition basis. For the avoidance of doubt, the Debtors seek authority to pay only those amounts of the Lien Claims that the Debtors determine, in their sole discretion, to be necessary or appropriate to (i) obtain release of critical or valuable goods, (ii) maintain reliable and efficient distribution systems, and (iii) induce the Lien Claimants to continue performing and otherwise supporting the Debtors' operations on a postpetition basis.

19. The Debtors will use their business judgment and discretion on a claim-by-claim basis and pay only those Lien Claims, or a portion thereof, that are critical to maintaining the Debtors' continued operations and where the holders thereof provide the Debtors with favorable postpetition terms.

## III. <u>Customary Trade Terms</u>

20. The Debtors further request that the Court grant the Debtors the authority to allocate the foregoing amounts in their sole discretion, without prejudice to seek additional relief, and subject to an agreement (within the Debtors' discretion) to receive terms consistent with Customary Trade Terms (as defined herein) from the Trade Claimants. If granted discretion to satisfy Trade Claims as requested herein, the Debtors will assess, on a case-by-case basis, the benefits to their estates of paying the Trade Claims and pay any such claim only to the extent their

estates will benefit. The Debtors seek authority to pay the Trade Claims solely to the extent that such payments are necessary on a postpetition basis to ensure that a particular vendor continues to provide necessary goods and services to the Debtors.

21. Subject to Court approval, the Debtors intend to pay the Trade Claims only to the extent necessary to preserve their business during the sale process. To that end, in return for paying such claims either in full or in part, the Debtors propose that they be authorized to require the Trade Claimants to provide favorable trade terms for the postpetition procurement of goods and services.

22. Specifically, the Debtors seek authorization, but not direction, to condition payment of the Trade Claims upon such claimant's agreement to (a) continue (or recommence) supplying such products and services to the Debtors pursuant to trade terms (including credit limits, discounts, pricing, timing of payments, availability, and other terms) at least as favorable to the Debtors as those practices and programs are consistent with the parties' ordinary course practice or as otherwise agreed by the Debtors in their reasonable business judgment (the "Customary Trade Terms") and (b) not cancel any contract, agreement, or arrangement pursuant to which the Trade Claimants provide such goods or services to the Debtors during the course of these Chapter 11 Cases; *provided* that the Debtors continue to pay for such goods and services as and when required under the applicable agreements or arrangements. The Debtors also seek authorization to require, at their discretion, that the Customary Trade Terms be commemorated in writing, including by email or through a trade agreement, as a condition to payment, the form of which is attached to the Interim Order as Exhibit 1 (the "Trade Agreement").

23. In addition, the Debtors request that if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on

Customary Trade Terms, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

## IV. Payment of Outstanding Orders

24. Before the Petition Date and in the ordinary course of business, the Debtors may have ordered goods that will not be delivered until after the Petition Date (collectively, the "Outstanding Orders"). To avoid the risk of becoming general unsecured creditors of the Debtors' estates with respect to such goods, certain suppliers may refuse to ship or transport such goods or may recall such shipments with respect to such Outstanding Orders, potentially disrupting the Debtors' sale process and requiring the Debtors to expend substantial time and effort in issuing such substitute orders, unless the Debtors issue substitute purchase orders postpetition. To prevent any disruption to the Debtors' business operations, and given that goods delivered after the Petition Date are afforded administrative expense priority under section 503(b) of the Bankruptcy Code, the Debtors seek entry of an order (a) confirming administrative expense priority under section 503(b) of the Bankruptcy Code for all undisputed obligations of the Debtors arising from the acceptance of goods subject to Outstanding Orders and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

## Basis for Relief

### I. The Court Should Grant the Relief Requested Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code

25. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999). In so doing, these courts acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims.

26. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). "In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153 (D. Del. 1999) (collecting cases); *see also Armstrong World Indus., Inc. v. Phillips (In re Phillips)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors); *In re Ionosphere Clubs. Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain prepetition wages); *In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring the debtor to show a "good business reason" for a proposed transaction under section 363(b) of the Bankruptcy Code).

27. Courts also authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent

equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825−26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76. Indeed, at least one court has recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

28. As discussed above, these aspects of the Debtors' business are indispensable during these Chapter 11 Cases. It is therefore imperative that the Debtors have the authority to pay all the Trade Claimants, if determined necessary to preserve the Debtors' operations, reputation, and success of these Chapter 11 Cases. The relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors'

estates, and is therefore justified under sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code.

29. The Debtors submit that payment of Trade Claims as sought herein is necessary to preserve the value of their business pending the sale process, either because the Trade Claimants are a necessary component of the Debtors' supply network or because they are necessary to preserve the Debtors' relationships with key customers, including the United States Department of War, DLA, and GSA. Accordingly, for the reasons set forth herein, it is appropriate for the Court to authorize the Debtors to satisfy the Trade Claims.

## II. The Court Should Authorize the Payment of the Critical Vendor Claims

30. Allowing the Debtors to pay the Critical Vendor Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'Ship*, 526 U.S. 434, 453 (1999). Indeed, recognizing that payment of prepetition claims of certain essential suppliers and vendors is both critical to a debtor's ability to preserve value during the sale process and maximize creditor recovery, courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion. *See, e.g., In re Joann Inc.*, No. 25-10068 (CTG) [Docket No. 331] (Bankr. D. Del. Feb. 7, 2025) (authorizing the debtors to pay critical vendor claims).

31. The Debtors believe the payments to Critical Vendors sought herein are necessary to maximize the value of the Debtors' estates, avoid harm to the Debtors' relationships with the United States Department of War and other key government customers, and otherwise obtain a successful outcome in these cases. Moreover, failure to maintain relationships with the Critical Vendors may force the Debtors to give up favorable trade terms under existing agreements, thereby

hindering the Debtors' ability to generate revenue. Should any of the Critical Vendors delay or cease providing services to the Debtors, even on a temporary basis, the Debtors' business could face severe consequences. Aside from allowing payment to the Critical Vendors, no practical alternative exists by which the Debtors can protect the value of their estates. Accordingly, the Debtors seek authorization to pay Critical Vendor Claims in the ordinary course of business during these Chapter 11 Cases.

## III. Failure to Pay Certain of the Trade Claims (and Especially Lien Claims) Could Subject the Debtors' Assets to the Perfection of Statutory Liens

32. As noted above, certain potential Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory or other statutory liens on the Debtors' goods or equipment (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claims.

33. Without payment, the potential Lien Claimants may may be entitled to assert statutory lien rights because doing so may convert their claims against the Debtors from secured to unsecured. Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay protections. *See* 11 U.S.C. §§ 362(b)(3), 546(b)(1)(A) (providing that a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection"). The Debtors anticipate that certain of the Lien Claimants may assert or perfect liens, simply refuse to turn over goods in their possession, or stop performing their ongoing obligations. Even absent a valid lien, certain Lien Claimants in possession of the Debtors' inventory or equipment could disrupt the Debtors' operations by retaining possession and refusing to relinquish the Debtors' property.

34. Paying the Trade Claims should not impair unsecured creditor recoveries in these Chapter 11 Cases. In instances where the amount owed to a Lien Claimant is less than the value of the goods that could be held to secure a Lien Claim, such party may be a fully secured creditor of the Debtors' estates. In such instances, payment at the beginning of these Chapter 11 Cases only provides the Lien Claimants with what they might be entitled to receive under a chapter 11 plan without any interest costs that might otherwise accrue during these Chapter 11 Cases. Conversely, all creditors will benefit from the seamless transition of the Debtors' operations into bankruptcy.

35. Additionally, pursuant to section 363(e) of the Bankruptcy Code, the Lien Claimants may be entitled to adequate protection of a valid possessory lien to the extent that the Debtors use or sell the estate property against which a Lien Claim is asserted. Given that the value of such property will generally far exceed the value of the related Lien Claim, creditors will not be harmed—and, in fact, will be benefited—by satisfying certain amounts owed to the Lien Claimants. Those payments will facilitate the sale of estate property against which liens may otherwise be asserted, helping to preserve value. Accordingly, the Debtors seek authorization to pay Lien Claims in the ordinary course of business during these Chapter 11 Cases.

## IV. <u>The Court Should Confirm That Outstanding Orders Are Administrative Expense Priority Claims and That Payment of Such Claims Is Authorized</u>

36. Pursuant to section 503(b)(1) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of goods and services, including goods ordered prepetition, are administrative expense priority claims because they benefit the Debtors' estate postpetition. *See* 11 U.S.C. § 503(b)(1)(A) (providing that the "actual [and] necessary costs and expenses of preserving the estate" are administrative expenses); *see also In re John Clay & Co.*, 43 B.R. 797, 809-10 (Bankr. D. Utah 1984) (holding that goods ordered prepetition but delivered

postpetition are entitled to administrative priority). Granting the relief sought herein with respect to the Outstanding Orders will not afford such claimants any greater priority than what they would otherwise be entitled to if the relief requested herein were not granted, and it will not prejudice any other party in interest.

37. Absent such relief, however, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide certain suppliers with assurance of their administrative priority status. The disruption to continuous and timely flow of critical goods and services to the Debtors could halt the Debtors' operations, damaging the Debtors' business reputation, eroding their customer base, and ultimately leading to a loss of revenue, all to the detriment of the Debtors' estate and their creditors. In light of the foregoing, the Court should confirm the administrative expense priority status of the Outstanding Orders and authorize the Debtors to pay the Outstanding Orders in the ordinary course of business.

**Processing of Checks and**
**Electronic Fund Transfers Should Be Authorized**

38. The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of access to expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority, but not direction, to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**The Requirements of Bankruptcy Rule 6003(b) Are Satisfied**

39. Bankruptcy Rule 6003 empowers a court to grant certain relief within the first twenty-one days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm." FED. R. BANKR. P. 6003. For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical and the failure to receive the relief requested herein during the first twenty-one days of these Chapter 11 Cases could adversely impact the Debtors' operations at this important juncture. The requested relief is necessary for the Debtors to operate this business in the ordinary course, preserve the value of their business, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

**Reservation of Rights**

40. Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order) is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, priority, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability,

or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

41. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

42. Notice of this Motion will be provided to: (i) the U.S. Trustee; (ii) counsel to the Prepetition ABL Agent; (iii) counsel to the Prepetition Term Loan Agent; (iv) counsel to the Prepetition Note Agent; (v) counsel to the Prepetition Subordinated Note Holders; (vi) the creditors listed on the Debtors' consolidated list of thirty (30) creditors holding the largest unsecured claims; (vii) the United States Attorney for the District of Delaware; (viii) the Internal Revenue Service; (ix) the state attorneys general for states in which the Debtors conduct business; (x) the Trade Claimants; and (xi) all parties that have requested notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, the Debtors will serve this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice is required under the circumstances.

**No Prior Request**

43. No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, each substantially in the forms attached hereto, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: August 30, 2026
Wilmington, Delaware

*/s/ Justin R. Alberto*
**COLE SCHOTZ P.C.**
Justin R. Alberto (No. 5126)
Patrick J. Reilley (No. 4451)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: jalberto@coleschotz.com
preilley@coleschotz.com
jdougherty@coleschotz.com

-and-

Michael D. Sirota (*pro hac vice* pending)
Seth Van Aalten (*pro hac vice* pending)
Sarah A. Carnes (*pro hac vice* pending)
Anthony De Leo (*pro hac vice* pending)
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: msirota@coleschotz.com
svanaalten@coleschotz.com
scarnes@coleschotz.com
adeleo@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com

-and-

Patrick J. Nash, Jr., P.C. (*pro hac vice* pending)
Charles B. Sterrett (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
charles.sterrett@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# **Exhibit A**

## **Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Noble Supply & Logistics, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-11369 (___)<br><br>(Jointly Administered)<br><br>**Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND LIEN CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order") (i) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of Trade Claims, (ii) confirming administrative expense priority of Outstanding Orders, and (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction to consider this Motion under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Noble Supply & Logistics, LLC (7926); COTS Solutions, LLC (4477); Federal Resources Supply Company, LLC (3636); FRS Holdings, LLC (2327); K.D. Analytical Consulting, LLC (6637); KDA Acquisition, LLC (5870); Noble Defense Corporation (N/A); Noble Equity Holdings, LLC (0851); Noble.com, LLC (4712); and Tactical & Survival Specialties, LLC (2266). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 1 Marina Park Drive, Suite 220, Boston, MA 02210.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor; it is **HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on an interim basis as set forth herein.

2. The final hearing on the Motion shall be held on **______ ___, 2026, at __:__ _.m.**, prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before **4:00 p.m. (prevailing Eastern Time) on ______ ___, 2026** and shall be served on: (a) proposed co-counsel for the Debtors, (i) Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago Illinois 60654, Attn.: Patrick J. Nash, Jr., P.C. (patrick.nash@kirkland.com) and Charles B. Sterrett (charles.sterrett@kirkland.com) and (ii) Cole Schotz P.C., 500 Delaware Avenue, Suite 600, Wilmington, Delaware 19801, Attn: Justin R. Alberto (jalberto@coleschotz.com), Patrick J. Reilley (preilley@coleschotz.com) and Jack M. Dougherty (jdougherty@coleschotz.com) and 1325 Avenue of the Americas, 19th Floor, New York, NY 10019, Attn: Seth Van Aalten (svanaalten@coleschotz.com), Sarah A. Carnes (scarnes@coleschotz.com) and Anthony De Leo (adeleo@coleschotz.com); (b) counsel to the

Prepetition ABL Agent, Otterbourg P.C., 230 Park Avenue, New York, NY 10169, Attn: Daniel F. Fiorillo (dfiorillo@otterbourg.com); (c) counsel to the Prepetition Term Loan Agent, McDermott Will & Schulte LLP, 919 Third Avenue, NY, NY 10022, Attn: Adam C. Harris (acharris@mcdermottlaw.com) and Reuben E. Dizengoff (rdizengoff@mcdermottlaw.com); (d) counsel to the Prepetition Subordinated Note Agent, Arnold & Porter Kaye Scholer LLP, 250 West 55th Street, New York, NY 10019, Attn: Alan Glantz (alan.glantz@arnoldporter.com); (e) counsel to the Prepetition Subordinated Note Holders, (i) King & Spalding LLP, 1180 Peachtree Street, NE, Suite 1600, Atlanta, GA 30309, Attn: Jeffrey R. Dutson (jdutson@kslaw.com) and (ii) Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801, Attn: Allison S. Mielke (amielke@ycst.com); (f) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov); and (g) counsel to any statutory committee appointed in the Chapter 11 Cases. If no objections or responses are filed and served, this Court may enter a final order without further notice or hearing.

3. The Debtors are authorized, but not directed, to pay all or part of, and discharge, on a case-by-case basis, the Trade Claims in an aggregate amount not to exceed $500,000 on an interim basis, absent further order of the Court.

4. Notwithstanding anything to the contrary in the Motion or this Interim Order, the Debtors shall not: (a) designate (i) any insider, (ii) any of the Debtors' professionals, or (iii) any entity affiliated with any insider as a Trade Claimant; (b) enter into any Customary Trade Terms with any insider or any entity affiliated with any insider; and/or (c) pay any Trade Claims of any insider, any of the Debtors' professionals, or any entity affiliated with any insider in each case, prior to consultation with counsel to each of any committee of unsecured creditors that may be

appointed, the Prepetition ABL Agent, the Prepetition Term Loan Agent, the Prepetition Subordinated Note Agent, and the Prepetition Subordinated Note Holders or further order of the Court after notice and a hearing. For purposes of this Order, the term "insider" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

5. All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code. The Debtors are authorized to pay all undisputed amounts related to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

6. As a condition to receiving payment hereunder, the Debtors, in their sole discretion, may require, by written agreement, such parties to continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) consistent with the parties' ordinary course practice (collectively, the "Customary Trade Terms"). The Debtors reserve the right to require more favorable trade terms with any party as a condition to payment of any prepetition claim.

7. The form of the Trade Agreement, substantially in the form attached to this Interim Order as **Exhibit 1**, is approved in its entirety, and the Debtors are authorized to negotiate, modify, or amend the Trade Agreement in their reasonable business judgment.

8. If any party accepts payment hereunder for a prepetition obligation of the Debtors premised on compliance with the above, and thereafter fails to comply with the Customary Trade Terms, or other such terms as agreed to by the Debtors, then, subject to entry of a final order on the Motion from this Court: (a) any payment on account of a prepetition claim received by such

party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise; and (d) the Debtors may pursue any other remedy available to them under this Interim Order, applicable law, or any executed writing with such party.

9. Any Trade Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Interim Order, including, but not limited to, any Trade Claimant accepting any payment on account of an Outstanding Order, shall be deemed to (a) agree to the terms and provisions of this Interim Order and (b) have waived, to the extent so paid, Trade Claims of any type, kind, or priority (including any reclamation claim) against the Debtors and their assets. The Debtors shall provide a copy of this Interim Order to any Trade Claimant in advance of any payment made pursuant to this Interim Order.

10. Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Trade Claimant. The Debtors do not concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority, of such claims.

11. Notwithstanding the foregoing, prior to entry of an order granting the relief requested in the Motion on a final basis, the Debtors are not authorized to pay any prepetition amounts on account of Trade Claims before the applicable due dates of such claims.

12. Notwithstanding anything to the contrary in this Interim Order, the Motion or its attachments, the priority status of a creditor's claim, including that of claims arising under section 503(b)(9) of the Bankruptcy Code, shall not be affected by whether such creditor provides services or goods to the Debtors under Customary Trade Terms.

13. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

14. Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority,

enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

15. The Debtors shall maintain a schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Interim Order, including the following information: (a) the name of the transferor; (b) the name of the transferee; (c) the amount of the payment; and (d) the purpose of the payment; *provided* that the Debtors shall provide a copy of such schedule to counsel to the Prepetition ABL Agent, counsel to the Prepetition Term Loan Agent, counsel to the Prepetition Subordinated Note Agent, counsel to the Prepetition Subordinated Note Holders, the U.S. Trustee, and counsel to any statutory committee appointed in these Chapter 11 Cases upon reasonable request, and in any event within three (3) business days following any such request.

16. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with the relief granted herein.

17. Notwithstanding the relief granted in this Interim Order, any payment made or to be made by the Debtors pursuant to the authority granted herein, and any relief or authorization granted herein, shall be subject to and in compliance with each interim and final order entered by the Court in respect of the Cash Collateral Motion (the "Cash Collateral Order") including compliance with the Approved Budget (as defined in the Cash Collateral Order) in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral

Order. To the extent there is any inconsistency between the terms of the Cash Collateral Order and the terms of this Interim Order, or any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order and Approved Budget (as defined in the Cash Collateral Order) shall control.

18. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm" as contemplated by Bankruptcy Rule 6003.

19. Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due.

20. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

21. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

22. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

23. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

# **Exhibit 1**

## Trade Agreement

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

# TRADE AGREEMENT

Noble Supply & Logistics, LLC and its debtor affiliates (collectively, the "Debtors"), on the one hand, and the supplier identified in the signature block below ("Supplier") (the Debtors and the Supplier each, a "Party" and collectively, the "Parties"), on the other hand, hereby enter into this Trade Agreement (as amended, supplemented, restated, or otherwise modified from time to time pursuant to the terms hereof, this "Trade Agreement") dated as of the date in the Supplier's signature block below.

## Recitals

WHEREAS on [●], 2026 (the "Petition Date"), the Debtors[1] each filed voluntary petitions for relief (the "Chapter 11 Cases") under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

WHEREAS on [●], 2026, the Court entered the *Interim Order (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors and Lien Claimants, (II) Confirming Administrative Expense Priority of Outstanding Orders, and (III) Granting Related Relief* [Docket No. ●] (the "Interim Order", and together with any final order entered by the Court, the "Critical Vendor Order") authorizing the Debtors on an interim basis, under certain conditions, to pay the prepetition claims of certain vendors, including Supplier, subject to the terms and conditions set forth therein.[2]

WHEREAS prior to the Petition Date, Supplier delivered goods to the Debtors and/or performed services for the Debtors, and the Debtors paid the Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Noble Supply & Logistics, LLC (7926); COTS Solutions, LLC (4477); Federal Resources Supply Company, LLC (3636); FRS Holdings, LLC (2327); K.D. Analytical Consulting, LLC (6637); KDA Acquisition, LLC (5870); Noble Defense Corporation (N/A); Noble Equity Holdings, LLC (0851); Noble.com, LLC (4712); Noble Mission Support, LLC (7908); and Tactical & Survival Specialties, LLC (2266). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 1 Marina Park Drive, Suite 220, Boston, MA 02210.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Interim Order.

WHEREAS the Interim Order permits the Debtors to condition payment on account of certain prepetition claims the Supplier may hold against the Debtors on execution of this Trade Agreement.

WHEREAS the Parties agree to the following terms as a condition of payment of the Agreed Supplier Payment (as defined below) in full and final satisfaction of the Prepetition Supplier Claim (as defined below).

1. Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2. Agreed Supplier Payment. Supplier represents and agrees that, after due investigation, the sum of all amounts due and owing by the Debtors to Supplier as of the Petition Date is $[●] (the "Prepetition Supplier Claim"). Within 10 business days of execution of this Trade Agreement, the Debtors shall pay the Supplier $[●] on account of, and in full and final satisfaction of, its Prepetition Supplier Claim (the "Agreed Supplier Payment") (without interest, penalties, or other charges). The Prepetition Supplier Claim does not constitute a claim allowed by the Court in this case, and entry into this Trade Agreement does not change the nature or priority of the Prepetition Supplier Claim. For the avoidance of doubt, any amounts that become due and owing by the Debtors to the Supplier for goods or services provided after the Petition Date shall continue to be due and owing and shall be paid in the ordinary course pursuant to the Parties' agreed-upon payment terms.

3. Agreement to Supply.

a. Supplier shall supply goods to and/or perform services for the Debtors, and the Debtors shall accept and pay for goods and/or services from Supplier, for the Duration of these Chapter 11 Cases[3] based on the following terms (collectively, the "Customary Trade Terms"): those trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, promotional credits, timing of payments and payment terms, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 12 months prior to the Petition Date, or are otherwise acceptable to the Debtors in light of customary industry practices.

b. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Debtors except as agreed to in writing by the Parties (email being sufficient).

3 "Duration of these Chapter 11 Cases" means until the earlier of: (i) the effective date of a chapter 11 plan in the Chapter 11 Cases; (ii) the closing of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, resulting in a cessation of the Debtors' business operations; (iii) the liquidation of the Debtors or conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code; or (iv) a termination event occurs that results in the Debtors losing access to cash collateral.

c. Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

d. Supplier shall continue all shipments of goods or performance of services in the ordinary course and shall fill orders for goods or services requested by the Debtors in the ordinary course of business pursuant to the Customary Trade Terms.

e. Supplier shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which Supplier provides services to the Debtors for the Duration of these Chapter 11 Cases.

f. In the event this Trade Agreement is terminated, such termination will not affect the obligation of Supplier to make delivery on orders consistent with the Debtors' prior orders and sales accepted by Supplier prior to the effective date of termination, subject to the provisions contained herein. If this Trade Agreement terminates, the Debtors may require Supplier to repurchase all unsold goods in the Debtors' inventory, at the Debtors' laid-in-cost, with shipping to Supplier's plant to be paid by Supplier. Supplier will pay the Debtors for repurchased inventory seven (7) business days after receipt. Alternatively, Supplier may designate a party to purchase the Debtors' merchantable inventory of goods at the Debtors' laid-in-cost.

4. Other Matters.

As long as the Agreed Supplier Payment is made in accordance with this Trade Agreement, the Debtors do not exercise its rights in Section 5(a), and this Trade Agreement is not terminated by either Party:

a. Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in these Chapter 11 Cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b. Supplier will not separately seek payment from the Debtors on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in these Chapter 11 Cases; *provided* that nothing in this Trade Agreement shall excuse Supplier from any requirement of, or prohibit Supplier from, (a) filing a proof of claim with the Court or the Court-appointed claims agent or (b) filing with

the Court, or otherwise seeking, a request for payment of an administrative expense claim.

c. During the Duration of these Chapter 11 Cases, Supplier will not file or otherwise assert against the Debtors, their assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Debtors arising solely from prepetition agreements or transactions. If Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, upon Supplier's receipt of the Agreed Supplier Payment, Supplier will promptly take all necessary actions to remove such lien.

5. Breach.

a. In the event that the Debtors pay Supplier its Agreed Supplier Payment and Supplier is determined by the Court to have breached this Trade Agreement (a "Supplier Breach"), upon written notice to Supplier describing the nature of Supplier's defaults hereunder (which the Supplier shall have the right to dispute in accordance with Section 7(d)) and Supplier's failure to cure such default within five (5) business days of such notice, Supplier shall promptly pay to the Debtors immediately available funds in an amount equal to, at the election of the Debtors, the Agreed Supplier Payment or any portion of the Agreed Supplier Payment which cannot be recovered by the Debtors from the postpetition receivables then owing to Supplier from the Debtors.

b. In the event that the Debtors recover the Agreed Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Prepetition Supplier Claim shall be reinstated as if the Agreed Supplier Payment had not been made, and Supplier shall be authorized to file a proof of claim on account of the Agreed Supplier Claim by the later of (i) any bar date set in these chapter 11 cases or (ii) 30 calendar days following the return of the Agreed Supplier Payment.

c. Supplier acknowledges and agrees that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Debtors. Accordingly, Supplier agrees that the Debtors shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond

or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

d. In the event the Debtors fail to pay for goods or services produced, shipped, or delivered postpetition in accordance with this Trade Agreement, and the Debtors fail to cure such default within five business days (or such longer period if the purported breach cannot be cured within five days but the Debtors are diligently pursuing cure) after receiving written notice of such default (which the Debtors shall have the right to dispute in accordance with Section 7(d)), the Supplier (a) may terminate this Trade Agreement and shall have no obligation to continue to supply goods or provide services to the Debtors and (b) is authorized to file a proof of claim in the amount of the Prepetition Supplier Claim less any amount of the Agreed Supplier Payment paid by the Debtors to the Supplier by the later of (i) any bar date set in these chapter 11 cases or (ii) 30 calendar days following expiration of the cure period contemplated in this paragraph. The Parties reserve all rights to dispute the relative priority of such claim.

6. Notice.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Noble Supply & Logistics, LLC
One Marina Park Drive
Suite 220
Boston, MA 02210
Attn: Thomas Noble

with a copy (which shall not constitute notice) to:

Cole Schotz P.C.
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Attn: Justin R. Alberto, Patrick J. Reilley, and Anthony De Leo
Email: jalberto@coleschotz.com
preilley@coleschotz.com
adeleo@coleschotz.com

7. Representations and Acknowledgements. The Parties agree, acknowledge, and represent that:

a. the Parties have reviewed the terms and provisions of the Interim Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Interim Order;

b. any payments made on account of the Prepetition Supplier Claim, including the Agreed Supplier Payment, shall be subject to the terms and conditions of the Critical Vendor Order;

c. if Supplier refuses to supply goods or services to the Debtors as provided herein or otherwise fails to perform any of its obligations hereunder, the Debtors may exercise all rights and remedies available under this Trade Agreement, the Critical Vendor Order, the Bankruptcy Code, or applicable law; and

d. in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods or performance of services from Supplier to the Debtors, or the Debtors' payment to the Supplier for such goods and services, until a ruling of the Court is obtained.

8. Confidentiality. In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Debtors pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "Confidential Information"); *provided* that if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Debtors with written notice so that the Debtors may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided*, *further*, that if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9. Miscellaneous.

a. The Parties hereby represent and warrant that: (a) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (b) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (c) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b. This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties. Moreover, Supplier agrees to vote all claims now or hereafter beneficially owned by Supplier in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan proposed by the Debtors on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying

solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith as long as such chapter 11 plan provides for a treatment of any Agreed Supplier Claim that is materially consistent with this Trade Agreement.

c. Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d. This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e. The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement, *provided* that, the Debtors shall have the right to enforce this Trade Agreement, including by seeking an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement, in any jurisdiction. The terms of this Trade Agreement shall be governed by the Bankruptcy Code and the laws of the State of Delaware, each as may be applicable.

f. This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature Page Follows*]

AGREED AND ACCEPTED AS OF THE DATE SET FORTH BELOW:

**[DEBTOR ENTITY]**

____________________________________
By: [●]
Title: [●]

Date: [●]

**[SUPPLIER]**

____________________________________
By: [●]
Title: [●]
Address for Notice: [●]

Date: [●]

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Noble Supply & Logistics, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-11369 (___)<br><br>(Jointly Administered)<br><br>**Re: Docket No. __** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS AND LIEN CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY OF OUTSTANDING ORDERS, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order") (i) authorizing the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of Trade Claims, (ii) confirming administrative expense priority of Outstanding Orders, and (iii) granting related relief, all as more fully set forth in the Motion; and upon consideration of the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction to consider this Motion under 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court

---

1 The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Noble Supply & Logistics, LLC (7926); COTS Solutions, LLC (4477); Federal Resources Supply Company, LLC (3636); FRS Holdings, LLC (2327); K.D. Analytical Consulting, LLC (6637); KDA Acquisition, LLC (5870); Noble Defense Corporation (N/A); Noble Equity Holdings, LLC (0851); Noble.com, LLC (4712); and Tactical & Survival Specialties, LLC (2266). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 1 Marina Park Drive, Suite 220, Boston, MA 02210.

2 Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and that no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor; it is **HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to pay all or part of, and discharge, on a case-by-case basis, the Trade Claims in an aggregate amount not to exceed $5 million on a final basis, absent further order of the Court.

3. Notwithstanding anything to the contrary in the Motion or this Final Order, the Debtors shall not: (a) designate (i) any insider, (ii) any of the Debtors' professionals, or (iii) any entity affiliated with any insider as a Trade Claimant; (b) enter into any Customary Trade Terms with any insider or any entity affiliated with any insider; and/or (c) pay any Trade Claims of any insider, any of the Debtors' professionals, or any entity affiliated with any insider in each case, prior to consultation with counsel to each of any committee of unsecured creditors that may be appointed, the Prepetition ABL Agent, the Prepetition Term Loan Agent, the Prepetition Subordinated Note Agent, and the Prepetition Subordinated Note Holders, or further order of the

Court after notice and a hearing. For purposes of this Order, the term "insider" shall have the meaning ascribed to such term in section 101(31) of the Bankruptcy Code.

4. All undisputed obligations related to the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(A) of the Bankruptcy Code. The Debtors are authorized to pay all undisputed amounts related to the Outstanding Orders in the ordinary course of business consistent with the parties' customary practices in effect prior to the Petition Date.

5. As a condition to receiving payment hereunder, the Debtors, in their sole discretion, may require, by written agreement, such parties to continue supplying goods or services to the Debtors in accordance with trade terms at least as favorable to the Debtors as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) consistent with the parties' ordinary course practice (collectively, the "Customary Trade Terms"). The Debtors reserve the right to require more favorable trade terms with any party as a condition to payment of any prepetition claim.

6. The form of the Trade Agreement, substantially in the form attached to the Interim Order as Exhibit 1, is approved in its entirety on a final basis, and the Debtors are authorized to negotiate, modify, or amend the Trade Agreement in their reasonable business judgment.

7. If any party accepts payment hereunder for a prepetition obligation of the Debtors premised on compliance with the above, and thereafter fails to comply with the Customary Trade Terms, or other such terms as agreed to by the Debtors, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, an improper postpetition transfer and, therefore, immediately recoverable in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be

reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

8. Any Trade Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Final Order, including, but not limited to, any Trade Claimant accepting any payment on account of an Outstanding Order, shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, Trade Claims of any type, kind, or priority (including any reclamation claim) against the Debtors and their assets. The Debtors shall provide a copy of this Final Order to any Trade Claimant in advance of any payment made pursuant to this Final Order.

9. Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Trade Claimant. The Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority, of such claims.

10. Notwithstanding anything to the contrary in this Final Order, the Motion, or its attachments, the priority status of a creditor's claim, including that of claims arising under section 503(b)(9) of the Bankruptcy Code, shall not be affected by whether such creditor provides services or goods to the Debtors under Customary Trade Terms.

11. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

12. Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

13. The Debtors shall maintain a schedule of amounts directly or indirectly paid, subject to the terms and conditions of this Final Order, including the following information: (a) the name of the transferor; (b) the name of the transferee; (c) the amount of the payment; and (d) the purpose of the payment; *provided* that the Debtors shall provide a copy of such schedule to the

counsel to the Prepetition ABL Agent, counsel to the Prepetition Term Loan Agent, counsel to the Prepetition Subordinated Note Agent, counsel to the Prepetition Subordinate Note Holders, the U.S. Trustee, and counsel to any statutory committee appointed in these Chapter 11 Cases upon reasonable request, and in any event within three (3) business days following any such request.

14. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with the relief granted herein.

15. Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

16. Notwithstanding the relief granted in this Final Order, any payment made or to be made by the Debtors pursuant to the authority granted herein, and any relief or authorization granted herein, shall be subject to and in compliance with each interim and final order entered by the Court in respect of the Cash Collateral Motion (the "Cash Collateral Order") including compliance with the Approved Budget (as defined in the Cash Collateral Order) in connection therewith and any other terms and conditions thereof. Nothing herein is intended to modify, alter, or waive, in any way, any terms, provisions, requirements, or restrictions of the Cash Collateral Order. To the extent there is any inconsistency between the terms of the Cash Collateral Order and the terms of this Final Order, or any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order and Approved Budget (as defined in the Cash Collateral Order) shall control.

17. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice.

18. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

19. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

20. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.