**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>NOBLE SUPPLY & LOGISTICS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-11369 (CTG)<br><br>(Jointly Administered) |
| NOBLE SUPPLY & LOGISTICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>DEFENSE LOGISTICS AGENCY,<br><br>Defendant. | Adv. Proc. No. 26-_______ (CTG) |

**ADVERSARY COMPLAINT**

Noble Supply & Logistics, LLC ("Noble" and, collectively with its affiliated debtors and debtors in possession, the "Debtors"), a debtor and debtor in possession in the above-captioned chapter 11 cases and plaintiff in the above-captioned adversary proceeding (this "Adversary Proceeding"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. Noble brings this action against the Defense Logistics Agency (the "DLA"), Noble's largest customer, for turnover of not less than $18,960,176.31 on account of safety

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Noble Supply & Logistics, LLC (7926); COTS Solutions, LLC (4477); Federal Resources Supply Company, LLC (3636); FRS Holdings, LLC (2327); K.D. Analytical Consulting, LLC (6637); KDA Acquisition, LLC (5870); Noble Defense Corporation (N/A); Noble Equity Holdings, LLC (0851); Noble.com, LLC (4712); Noble Mission Support, LLC (7908); and Tactical & Survival Specialties, LLC (2266). The location of the Debtors' principal place of business and the Debtors' service address in these chapter 11 cases is 1 Marina Park Drive, Suite 220, Boston, MA 02210.

equipment, training services, and tactical gear Noble delivered without receiving payment. The DLA refuses to validate Noble's proof of delivery for these goods and services, thereby preventing Noble from invoicing the DLA for the orders it fulfilled. The DLA appears to take the blanket position that because it terminated certain orders under its contracts with Noble on August 27, 2026, it is entitled to withhold payment for *all* Noble orders, including orders that were fulfilled through and including the termination date and expressly excluded from the Termination Notices (defined below). The DLA cannot evade its payment obligations for goods and services validly delivered and provided, and accepted, based on a facially ineffective Termination Notice. Nor can the DLA refuse to pay for goods and services delivered and provided after the August 27 termination date with respect to which the government has retained the benefit.

2. The instant dispute is not the first time Noble has sought this Court's intervention due to the DLA's failure to pay Noble amounts due and owing. On September 18, 2026, the Court entered an Order finding that the DLA improperly exercised setoff rights against $6,972,618 in payables that were due and owing to Noble and directed the DLA to promptly remit payment thereof.[2] The DLA has now manufactured a new yet equally baseless reason to refuse to pay Noble–this time based on the purported termination of orders that have already been delivered and accepted.

3. Noble depends upon timely payment from the DLA to maintain sufficient liquidity to operate its business and administer these chapter 11 cases. Absent recovery of the amounts sought herein, which are due and owing, Noble will likely lack sufficient liquidity to operate in

[2] *See In re: Noble Supply & Logistics, LLC, et al.*, Case No. 26-11369 (CTG) (Bankr. D. Del. Sep. 18, 2026) [D.I 151] at ¶ 6. Citations to [D.I.] shall refer to the docket in these chapter 11 cases.

chapter 11 after October 30, 2026. Accordingly, the relief sought herein is vital to Noble's ability to complete the sale process and confirm a plan.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Noble consents to entry of final orders or a final judgment by this Court in this Adversary Proceeding.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

6. The statutory bases for the relief requested herein are sections 105(a), 541(a), and 542(b) of the Bankruptcy Code and Bankruptcy Rule 7001. Noble has made no prior request for the relief requested herein to this Court or any other court.

## THE PARTIES

7. Plaintiff Noble is a Delaware limited liability company and a debtor in the above-captioned chapter 11 cases.

8. Defendant the DLA is a combat support agency of the United States Department of War.

## FACTUAL BACKGROUND

### I. Overview of Noble

9. Noble is a Boston-based small business that has supported the United States Department of War for over twenty years. Since its founding in 2003 by Thomas W. Noble, III, Noble has acted as a global supplier of mission-critical, non-lethal military equipment and services to the United States military and its allies. Through a combination of organic growth and strategic

business acquisitions, Noble has built a logistical highway that connects over 4,000 government customers to over 15,000 vendors to ensure efficient supply lines and promote military readiness.

10. Noble is the fifth largest prime vendor to the DLA, which manages the supply chain for the United States military. The DLA is comprised of many subordinate commands, which handle discrete aspects of the military supply chain. These subordinate commands include DLA Weapons Support, which provides weapons support for U.S. air, land, and sea operations, and DLA Troop Support, which is responsible for supply chains providing military personnel with subsistence, medical supplies, clothing and textiles, and construction equipment. Noble's relationship with the DLA is described in greater detail below.

## II. Noble's Contracts with the DLA

11. Noble and the DLA are parties to multiple contracts, under which Noble supplies the United States military and its allies with, among other mission critical items, safety equipment, training services, and tactical gear.

12. The following contracts between Noble and the DLA are relevant to the instant dispute:[3]

i. Contract No. SPE8EJ-21-D-0022 dated as of January 5, 2021, through which Noble provides special operations equipment to military commands, federal agencies, and other authorized DLA customers located worldwide (the "SOE Contract");[4] and

ii. Contract No. SPE8EH-24-D-0003 dated as of March 14, 2024, through which Noble provides fire and emergency services equipment to military commands, federal agencies, and other authorized DLA customers located worldwide (the "F&ESE Contract" and, together with the SOE Contract, the "Contracts").

[3] Contemporaneously herewith, Noble is filing a motion for partial summary judgment and a declaration of Robert Albergotti, Noble's Chief Transformation Officer in support thereof (the "Albergotti Declaration"). The Albergotti Declaration, including the exhibits thereto, are incorporated into this Complaint as if fully set forth herein.

[4] The SOE Contract includes certain separately created administrative contract numbers.

13. The Contracts are known in the defense industry as "Indefinite Delivery, Indefinite Quantity" contracts.

14. The SOE Contract has a base term of two years, followed by four two-year renewal periods, for a maximum potential term of ten years. The current term of the SOE Contract ends on January 4, 2027.

15. The F&ESE Contract had a base ordering term of two years ending on March 13, 2026, followed by four two-year renewal periods, for a maximum potential term of ten years. On March 13, 2026, the DLA sent Noble a notice of non-renewal of the F&ESE Contract. The F&ESE Contract provides:

> Any order issued during the effective period of this contract and not completed within that period shall be completed by the Contractor within the time specified in the order. The contract shall govern the Contractor's and Government's rights and obligations with respect to that order to the same extent as if the order were completed during the contract's effective period[.][5]

16. The Contracts provide that "[p]ayment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in the contract."[6]

17. As explained at the September 16, 2026 hearing, Noble's order fulfillment and invoice process under the Contracts is as follows:

i. *First*, contracted goods or services are delivered or provided to the DLA or another government end user (the "Government"), following which Noble receives proof of delivery from the shipper (in the case of goods) or training logs/sign in sheets (in the case of services);

ii. *Second*, Noble provides such proof of delivery of goods or provision of services to the DLA Contracting Officer under the relevant Contract;

[5] F&ESE Contact, Addendum 52.216-22 (d).

[6] F&ESE Contract, § 16(i); SOE Contract, § 17(i).

iii. *Third*, the Contracting Officer validates the proof of delivery of goods or provision of services, which authorizes Noble to invoice the order;

iv. *Fourth*, Noble uploads an invoice to Wide Area Workflow ("WAWF"), the DLA's web-based invoicing platform. Once an invoice is uploaded to WAWF, it is processed by a DLA representative, who confirms that the invoice was properly submitted; and

v. *Fifth*, once the invoice is processed, the DLA instructs the Defense Finance & Accounting Service, which processes payments for the DLA, to remit payment to Noble.

18. In the ordinary course of business, the DLA typically validates Noble's proof of delivery or provision of services, or raises specific issues precluding validation, within five business days of receipt of the delivery confirmation from the applicable freight forwarder or proof of services rendered. Absent any specifically identified issues with Noble's delivery of goods or provision of services, the total elapsed time between the delivery of product or provision of services to the end customer and the DLA's acceptance of the goods receipt or proof of services rendered in their system is approximately seven days. Under the DLA's own guidance referenced in the Defense Logistics Management Standards, the expectation is that the DLA will validate proof of goods receipts within five business days thereof.[7]

## III. The Accepted Delivery Orders

19. On August 14, 2026, the DLA sent Noble eight notices (collectively, the "Cure Notices")[8] threatening to terminate over $400 million of orders under the Contracts due to, among other things, Noble's "failure to secure and ship material" in connection therewith. The DLA

[7] *See* Table C10.T1 of the DLA's Defense Logistics Management Standards available at: https://www.dla.mil/Portals/104/Documents/DLMS/Manuals/DLM/V2/Volume2.pdf.

[8] The Cure Notices are comprised of: (i) one show cause notice and one cure notice (depending on whether the goods were overdue) for the F&ESE Contract; and (ii) three show cause notices and three cure notices for the SOE Contract, including certain administrative contracts thereunder.

requested that Noble provide the DLA with adequate assurance of future performance due to Noble's alleged defaults and deteriorating financial condition.

20. On August 24, 2026, Noble responded to the Cure Notices explaining, among other things, that many of the orders the DLA cited in the Cure Notices were not yet delinquent, and some were in fact fully or partially fulfilled. Noble also responded to the DLA's demand for adequate assurance of future performance with respect to goods or services that had not yet been delivered or provided. Following Noble's responses to the Cure Notices, the Government continued to take deliveries and receive services in connection with the orders referenced in the Cure Notices.

21. On August 27, 2026, after being advised that many of the orders cited in the Cure Notices had already been received and continuing to take additional deliveries and receive services for the next three days, the DLA sent Noble four Notices of Termination for Cause (collectively, the "Termination Notices"), pursuant to which the DLA purported to terminate the orders based on Noble's supposed failure to provide the DLA with adequate assurance of future performance and alleged defaults under the Contracts. Each of the Termination Notices provides:

> Delivery of material after the date of this notice will not be considered for Goods Receipt posting and Proof of Delivery's indicating delivery of material after the date of this notice will not be accepted or reviewed by DLA.
>
> Excepting the above: Delivery Orders with partial performance will have their outstanding balances terminated. Any receipted balance will remain receipted, and if an invoice has not been submitted to date, Noble must invoice for the outstanding amount that has been receipted. If Noble has already submitted an invoice for that receipted balance, no further action is needed.

Termination Notices at p.2 (emphasis supplied).

22. Despite the fact that the Termination Notices expressly excluded the Pre-Termination Delivery Orders from their purview, such orders were inexplicably included on the schedules attached to the Termination Notices.

23. Noble delivered certain goods to the contractually agreed-upon destinations or provided services to the appropriate party through the date of the DLA's purported termination on August 27, 2026, and the Government retained possession of such goods (the "Pre-Termination Delivery Orders"). For each Pre-Termination Delivery Order of goods, either a representative of the Government signed a receiving report for such goods or Noble obtained proof of delivery from a shipper or freight forwarder.

24. The Government has not raised any defects or nonconformities with respect to the goods and services associated with the Pre-Termination Delivery Orders as of the date hereof.

25. As of the date hereof, the DLA has refused to validate the proof of delivery or provision of services for $14,566,268.02 of Pre-Termination Delivery Orders, thereby preventing Noble from invoicing the DLA for such orders in the WAWF platform.

26. Following the DLA's purported termination on August 27, 2026, Noble delivered additional goods to the contractually agreed-upon destinations and provided additional services to the appropriate party, and the Government retained possession of such goods (the "Post-Termination Delivery Orders," and together with the Pre-Termination Delivery Orders, the "Accepted Delivery Orders"). For each Post-Termination Delivery Order of goods, either a representative of the Government signed a receiving report for such goods or Noble obtained proof of delivery from a shipper or freight forwarder.

27. The Government has not raised any defects or nonconformities with respect to the goods and services associated with the Post-Termination Delivery Orders as of the date hereof.

28. As of the date hereof, the DLA has refused to validate the proof of delivery or provision of services for $4,393,908.29 of Post-Termination Delivery Orders, thereby preventing Noble from invoicing the DLA for such orders in the WAWF platform.

29. In total, as of the date hereof, Noble is entitled to payment in connection with the Accepted Delivery Orders (delivered both as of and after the date of the Termination Notices) in the amount of not less than $18,960,176.31.

30. The Debtors have forecasted that the DLA would settle invoices in the ordinary course of business for goods delivered and services provided as of (and after) the date the Termination Notices were received. To that extent, the Debtors' liquidity forecast that underpins the Cash Collateral Order[9] (and related budget) assumed that a material portion of the $14,566,268.02 in Pre-Termination Delivery Orders would be paid. Absent an expedited resolution of this issue, the Debtors will exhaust their liquidity during the first week of November 2026.

## CAUSES OF ACTION

### COUNT I
### (Turnover Pursuant to 11 U.S.C. § 542)

31. Noble incorporates by reference paragraphs 1 through 30 as if fully set forth herein.

32. Noble supplied and delivered goods and services to the Government pursuant to the Contracts and Accepted Delivery Orders described herein. Noble fully performed its obligations with respect to the Accepted Delivery Orders by delivering the goods and providing the services associated therewith to the contractually agreed upon delivery destination or appropriate party.

[9] *Second Interim Order (I) Authorizing Limited Use of Cash Collateral, (II) Granting Adequate Protection Liens and Superpriority Administrative Expense Claims to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [D.I. 218] (the "Cash Collateral Order").

33. The Government signed the underlying receiving report for each of the deliveries of goods underlying the Accepted Delivery Orders or implicitly accepted such goods by failing to timely reject them following delivery. The Government accepted the services underlying the Accepted Delivery Orders at the time they were provided.

34. The Government has retained the benefit of the goods and services associated with the Accepted Delivery Orders.

35. To date, the Government has not identified any defects or non-conformities with respect to the goods and services underlying the Accepted Delivery Orders.

36. Pursuant to the Contracts, payment is required for items accepted by the Government that have been delivered to the applicable delivery destination.

37. As a result of Noble's delivery of goods and provision of services, and the Government's acceptance thereof, the DLA's obligation to pay Noble for the Accepted Delivery Orders is fixed, matured, presently due, and payable on demand, and no further act, event, or condition precedent is required to trigger the DLA's payment obligation.

38. The DLA presently owes Noble not less than $18,960,176.31 on account of the Accepted Delivery Orders.

39. Noble's right to receive payment from the DLA in connection with the Accepted Delivery Orders constitutes property of Noble's estate within the meaning of section 541(a) of the Bankruptcy Code and is subject to administration by Noble's estate for the benefit of its creditors.

40. The amounts owed by the DLA in connection with the Accepted Delivery Orders are of substantial value to Noble's estate and are not of inconsequential value or benefit.

41. As detailed in the Court's September 18, 2026 Order [D.I. 151], any rights of setoff under 11 U.S.C. § 553 must be asserted via a duly filed motion by the DLA, which to date has not been filed.

42. Section 542(b) of the Bankruptcy Code requires an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order to pay such debt to the debtor in possession.

43. Upon the filing of its chapter 11 petition, all legal and equitable interests of Noble in property became property of the estate under section 541(a) of the Bankruptcy Code.

44. Because the DLA owes a matured debt that constitutes property of Noble's estate, the DLA is required pay and turn over not less than $18,960,176.31 to Noble on account of the Accepted Delivery Orders pursuant to section 542(b) of the Bankruptcy Code.

45. In the alternative, to the extent the Court determines that direct turnover of the receivable or debt is unavailable under section 542(b), as of the date of this Complaint, the Government is in possession, custody, or control of property of the estate, or the value thereof, within the meaning of section 542(a) of the Bankruptcy Code.

46. By retaining the benefit of the goods and services delivered and provided by Noble while failing to remit payment therefor, the DLA has retained property of the estate, or the value of such property, that Noble may use, sell, or lease pursuant to section 363 of the Bankruptcy Code.

47. Pursuant to section 542(a) of the Bankruptcy Code, the DLA is therefore required to deliver to Noble the value of the property of the estate represented by the unpaid Accepted Delivery Orders in an amount not less than $18,960,176.31.

**COUNT II**
**(Breach of Contract)**

48. Noble incorporates by reference paragraphs 1 through 47 as if fully set forth herein.

49. Noble and the DLA are parties to the Contracts, which are valid and enforceable agreements. Pursuant to the Contracts, Noble agreed to provide goods and services requested by the DLA through orders issued under the Contracts, and the DLA agreed to pay for items accepted by the Government and delivered to the applicable delivery destinations or provided to the appropriate party. The Contracts each specifically provide that "[p]ayment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in the contract."

50. Noble fully performed its obligations under the Contracts in all material respects with respect to the Accepted Delivery Orders at issue. Among other things, Noble procured, shipped, and delivered the goods and provided the services required by the Accepted Delivery Orders and satisfied, or caused to be satisfied, all requirements necessary to entitle Noble to payment for such goods and services. To the extent applicable, Noble provided proof of delivery of the goods and provision of the services associated with the Accepted Delivery Orders for which Noble seeks payment.

51. The Government signed the underlying receiving report for each of the deliveries of goods underlying the Accepted Delivery Orders or implicitly accepted such goods by failing to timely reject them following delivery. The Government accepted the services underlying the Accepted Delivery Orders at the time they were provided.

52. Accordingly, under the express terms of the Contracts, the DLA became obligated to pay Noble for such goods.

53. The DLA breached the Contracts by failing and refusing to pay Noble for goods delivered and services provided to and accepted by the Government under the Accepted Delivery Orders.

54. The DLA's failure to remit payment for accepted goods and services constitutes a material breach of the Contracts.

55. As a direct and proximate result of the DLA's breach, Noble has suffered damages in an amount not less than $18,960,176.31 under the Accepted Delivery Orders.

## PRAYER FOR RELIEF

**WHEREFORE**, Noble respectfully requests that this Court enter judgment in favor of Noble as follows:

(a) On Count I, an order requiring immediate turnover of estate property held by the DLA in the amount of not less than $18,960,176.31 to Noble;

(b) In the alternative, on Count II, an award of actual damages suffered by Noble in the amount of not less than $18,960,176.31 (plus reasonable interest as determined by this Court) to compensate it for any loss sustained;

(c) An award of reasonable attorneys' fees and costs incurred in this action; and

(d) Granting Noble such other relief as the Court deems appropriate under the circumstances.

[*Remainder of page intentionally left blank*]

Dated: October 6, 2026
Wilmington, Delaware


*<u>/s/ G. David Dean</u>*
**COLE SCHOTZ P.C.**
Justin R. Alberto (No. 5126)
G. David Dean (No. 6403)
Patrick J. Reilley (No. 4451)
Jack M. Dougherty (No. 6784)
500 Delaware Avenue, Suite 600
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
Email: jalberto@coleschotz.com
ddean@coleschotz.com
preilley@coleschotz.com
jdougherty@coleschotz.com

-and-

Michael D. Sirota (admitted *pro hac vice*)
Seth Van Aalten (admitted *pro hac vice*)
Sarah A. Carnes (admitted *pro hac vice*)
Anthony De Leo (admitted *pro hac vice*)
1325 Avenue of the Americas, 19th Floor
New York, NY 10019
Telephone: (212) 752-8000
Facsimile: (212) 752-8393
Email: msirota@coleschotz.com
svanaalten@coleschotz.com
scarnes@coleschotz.com
adeleo@coleschotz.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Email: joshua.sussberg@kirkland.com

-and-

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Charles B. Sterrett (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: patrick.nash@kirkland.com
charles.sterrett@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*